**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACK HARGROVE, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 12 C 8875 |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Jack Hargrove's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Petitioner's Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## PROCEDURAL BACKGROUND

On November 4, 2004, a grand jury returned a superseding indictment against Petitioner and his co-defendants charging Petitioner with conspiracy to commit mail fraud, multiple counts of mail and wire fraud, three counts of filing false income tax returns, and income tax evasion. On September 15, 2005, at the conclusion of an approximately five-week jury trial before District Judge James Moran, a jury convicted Petitioner on multiple counts of mail and wire fraud, two counts of filing a false income tax return, and conspiracy to commit mail fraud. The jury acquitted Petitioner on one count of filing a false income tax return and the tax evasion count. On May 26, 2006, Judge Moran sentenced Petitioner to 168 months in prison. One of Petitioner's co-defendants, Laurence Capriotti, entered a guilty plea on July 14, 2005, and then

cooperated with the government. Judge Moran sentenced Capriotti to a total of 168 months in prison on May 26, 2006, as well.

On direct appeal, Petitioner challenged the constitutionality of the mail and wire fraud statute, 18 U.S.C. §§ 1341, 1346, concerning the deprivation of the intangible right to honest services. Also, Petitioner claimed that his trial counsel, Edward Genson, had a potential or actual conflict of interest, and thus provided constitutionally ineffective assistance of counsel.[1] At oral argument, Petitioner's appellate counsel withdrew the ineffective assistance of counsel claim. The Seventh Circuit granted counsel's motion to withdraw this claim, and thereafter, affirmed Petitioner's conviction and sentence. *See United States v. Hargrove,* 579 F.3d 752, 754 (7th Cir. 2009). In outlining the underlying conspiracy involving Petitioner, the Seventh Circuit explained:

> Hargrove and Laurence Capriotti were co-owners of Intercounty Title Company of Illinois ("Intercounty"), a Chicago-based title insurance and escrow agent. The company sold title insurance policies issued by Stewart Title Guaranty Company.
>
> By the late 1980s, Intercounty was running an annual deficit in the millions as the result of a price war in the title insurance market. To cover its losses, Intercounty invested in junk bonds in the hopes that the bond yield would outperform their real estate obligations. The plan backfired, and Intercounty got itself into a hole from which it never recovered.
>
> Over a ten-year period beginning in 1990, Hargrove and other executives at Intercounty engineered numerous fraudulent schemes under which the title company's deficits were covered by thefts from its escrow account. In total, the fraudulent practices robbed Intercounty of more than $60 million.

*Id.* at 753.

On June 29, 2010, the United States Supreme Court vacated the judgment in this case and

---

[1] Marc Martin of Marc Martin, Ltd. also represented Petitioner in the underlying criminal proceedings.

2

remanded the matter to the Seventh Circuit to consider the impact of the Supreme Court's decision in *Skilling v. United States,* 561 U.S. ___, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010), regarding the honest services statute, 18 U.S.C. § 1346. On March 8, 2011, the Seventh Circuit reinstated the judgment and affirmed Petitioner's conviction. On November 7, 2011, the Supreme Court denied Petitioner's petition for writ of certiorari. In the interim, the Executive Committee reassigned this case to the Court on January 7, 2010. Petitioner filed the present Section 2255 motion on November 6, 2012.

## LEGAL STANDARD

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007); *see also Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley*, 523 U.S. at 621 (relief under 2255 "will not be allowed to do service for an appeal"); *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal.") (citation omitted).

If a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred

from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Sandoval v. United States,* 574 F.3d 847, 850-51 (7th Cir. 2009), or that enforcing the procedural default would lead to a "fundamental miscarriage of justice." *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012). Because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Waltower,* 643 F.3d 572, 579 (7th Cir. 2011).

## ANALYSIS

In his Section 2255 motion, Petitioner argues that his trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. Specifically, he argues that his trial counsel had an actual or potential conflict due to counsel's prior representation of his co-defendant Laurence Capriotti, Susan Peloza, who had worked for Intercounty, and Intercounty Title Company itself.

General claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which imposes a standard of inadequate performance and prejudice. *See Freeman v. Chandler,* 645 F.3d 863, 869 (7th Cir. 2011). On the other hand, if an actual conflict of interest adversely affected counsel's performance, prejudice is presumed pursuant to *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See Freeman,* 645 F.3d at 869; *Hall v. United States,* 371 F.3d 969, 973 (7th Cir. 2004). "Proceeding under *Sullivan* places a 'lighter burden' on the defendant than *Strickland* because demonstrating an 'adverse effect' is significantly easier than showing

4

'prejudice.'" *Hall,* 371 F.3d at 973. "An *actual* conflict exists when an attorney actively represents incompatible interests; it is more than a 'mere theoretical division of loyalties.'" *United States v. Fuller,* 312 F.3d 287, 291-92 (7th Cir. 2002) (emphasis in original) (quoting *Mickens v. Taylor,* 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002)). As the Seventh Circuit teaches:

> [A]n actual conflict exists if the defense counsel was faced with a choice between advancing his own interests above those of his client. We have held that an attorney's prior representation of another client leads to an actual conflict when the attorney faces the possibility of having to cross-examine his former client.

*Hall,* 371 F.3d at 973 (internal citation omitted). In addition, a petitioner must show more than an actual conflict – he must also show that counsel's actual conflict had an adverse effect on counsel's performance. *See id.* at 974; *see also Mickens v. Taylor,* 535 U.S. at 187. "A petitioner demonstrates an adverse effect by showing that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest." *Hall,* 371 F.3d at 974.

## I.    Actual Conflict of Interest

First, Petitioner maintains that trial counsel's representation of Capriotti, Peloza, and Intercounty Title Company establishes an actual conflict of interest. Evidence in the Petitioner's appellate record reveals that in 2007 – two years after Petitioner was convicted – Genson represented Terry Cornell in a criminal matter, 07 CR 0498, in which Peloza was a co-defendant. In that matter, the Information charged Peloza and Cornell with the misdemeanor offense of failing to make, keep, and supply certain tax-related information to the IRS in violation of 26 U.S.C. § 7203. The docket indicates that the district court appointed Genson as Cornell's attorney under the Criminal Justice Act ("CJA"). The district court also appointed Peloza's

5

attorney, Charles B. Sklarsky, under the CJA. Cornell and Peloza entered guilty pleas and Genson and Sklarsky wrote a joint sentencing memorandum for Cornell and Peloza. The district court then sentenced both Peloza and Cornell to probation.

Petitioner also maintains that Genson represented Intercounty in non-criminal matters prior to representing him in the underlying criminal prosecution. During that time period, Capriotti was the owner, president, and a director of Intercounty and its successors. The record, however, contains scant information about Genson's representation of Intercounty except that he assisted Intercounty's general counsel in representing the company in front of the United States Department of Housing and Urban Development and other civil matters during the 1990's. (03 CR 0779, R. 280, Sent. Tr., at 32, 43.)

Based on this evidence, Petitioner has failed to establish that when Genson was representing him at his criminal proceedings, Genson's representation of Peloza, Capriotti, or Intercounty somehow led to an actual conflict of interest. Specifically, Peloza and Capriotti did not testify at Petitioner's criminal trial, and thus Genson did not have the opportunity to cross-examine them. *See Hall,* 371 F.3d at 973. Also, there is no evidence in the record that Genson was faced with the choice between advancing his own interests above Petitioner's interests. *See Freeman,* 645 F.3d at 869. Moreover, Petitioner has not shown that any such actual conflict of interest had an adverse effect on Genson's performance, especially because Genson's work on behalf of Cornell and Peloza occurred after his representation of Petitioner and the record is unclear as to when or how Genson assisted Intercounty's general counsel during the relevant time period. *See Hall,* 371 F.3d at 974. In short, Petitioner's bare-boned allegations that Genson had an actual conflict of interest are not supported by the record. *See Fuller,* 312 F.3d at 291-92

6

(actual conflict must me more than "mere theoretical division of loyalties."). Indeed, the record does not support Petitioner's allegations that Genson had a potential conflict of interest and that this potential conflict prejudiced Petitioner. *See Hall,* 371 F.3d at 973; *see also Freeman*, 645 F.3d at 869. In fact, Petitioner fails to sufficiently explain how trial counsel's performance prejudiced his defense in the first instance, as discussed in detail below.

## II.     Strickland Analysis

Because Petitioner failed to establish any actual or potential conflict, the Court reviews his ineffective assistance of counsel claims under *Strickland*. Pursuant to *Strickland* and its progeny, Petitioner must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694. If Petitioner fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance.").

Construing Petitioner's pro se Section 2255 motion liberally, *see Gomez v. Randle,* 680 F.3d 859, 864-65 (7th Cir. 2012), he brings the following bases for his ineffective assistance of counsel claim: (1) trial counsel erred by not calling Peloza as a defense witness at trial; (2) trial counsel should have been a witness, himself, at trial; (3) trial counsel failed to properly impeach the government's witness Rossario Elaine Matthews; and (4) trial counsel failed to call a handwriting expert to testify at trial.

### A.     Peloza as a Defense Witness

Petitioner first argues that Genson's performance was deficient under *Strickland* because he failed to call Peloza as a defense witness at trial. Petitioner maintains that Peloza would have testified that Petitioner was an absentee owner of the business, resided in Florida, did not sign business checks, and was generally not involved in the direct day-to-day activities at Intercounty. At trial, another Intercounty employee, Theresa Crane, testified that it was Capriotti who ran Intercounty's day-to-day operations, and thus some of Peloza's testimony would have been cumulative. *See Valenzuela v. United States,* 261 F.3d 694, 699-700 (7th Cir. 2001).

In any event, when reviewing counsel's performance, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The Supreme Court also teaches that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. Here, the decision not to call Peloza was a reasonable, strategic choice, especially in light of evidence in the record that both Petitioner and Capriotti inappropriately directed Peloza to move funds from escrow accounts into company accounts, and thus Peloza's testimony would have be adverse to Petitioner's interests. *See Valenzuela,* 261 F.3d at 699-700 ("lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review"); *see also United States v. Lathrop,* 634 F.3d 931, 939 (7th Cir. 2011) (defects in proposed testimony sufficient reason not to call witness at trial). Accordingly, Petitioner has failed to establish that counsel's performance was deficient under the first *Strickland* prong.

Even if Petitioner could establish that counsel's performance was constitutionally inadequate, Petitioner has failed to establish the *Strickland* prejudice prong, namely, that trial

8

counsel's failure to call Peloza as a trial witness would have changed the outcome of his trial, due to the substantial trial evidence against Petitioner, including twenty-five government witnesses, such as, cooperating witnesses, Intercounty employees, outside auditors and bankers, and a representative of Intercounty's title insurance underwriter. *See Morales v. Johnson,* 659 F.3d 588, 602 (7th Cir. 2011). Therefore, Petitioner has failed to establish the *Strickland* prejudice prong under the circumstances.

**B.     Genson as a Witness**

Next, Petitioner argues that Genson's performance was deficient because Genson should have called himself as a witness at Petitioner's trial. In particular, Petitioner maintains that Genson was aware of Intercounty's operations and that Genson would have testified that Petitioner was "out of the loop" of the decision making process. Petitioner also argues that Genson was aware that Intercounty employees forged Petitioner's signature on financial documents and that Genson had the ability to prove the government wrong on material evidence used to convict him – allegations that are not supported by the record.

Nevertheless, counsel's decision not to call himself as a trial witness was well within a "wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. To clarify, in order for Genson to testify at trial, Judge Moran would have had to disqualify Genson as Petitioner's counsel, which would have been a risky strategic choice. *See United States v. Turner*, 651 F.3d 743, 750 (7th Cir. 2011). Indeed, it is well-established that courts "do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient," *Johnson v. Thurmer,* 624 F.3d 786, 792 (7th Cir. 2010), and the Court would be hard-pressed to conclude that Genson's decision not to call himself as a witness establishes that

9

his performance was constitutionally inadequate. Moreover, Petitioner has not established a reasonable probability that, but for counsel's error, the result of his trial would have been different under the second *Strickland* prong. *See Harris v. Thompson,* 698 F.3d 609, 644 (7th Cir. 2012) (reasonable probability is one undermining confidence in outcome of trial). Hence, Petitioner's argument based on Genson's failure to call himself as a witness is without merit.

### C. Government Witness Matthews

Petitioner also argues that trial counsel failed to properly cross-examine the government's witness Rossario Elaine Matthews. At trial, Matthews testified that she was a former manager at Intercounty and that Petitioner gave her directions regarding an indemnity account, including his authorization of overdrafts on certain accounts. In the present motion, Petitioner argues that trial counsel failed to ask Matthews on cross-examination about why Intercounty fired her, namely, that she had lied about taking emergency leave from her job.

Again, Petitioner's factual assertion that Intercounty fired Matthews because she lied is unsubstantiated. Assuming these facts are true, Petitioner's argument that trial counsel failed to properly impeach Matthews does not amount to a constitutionally deficient performance under *Strickland* when viewed in the context of counsel's overall performance. *See Brown v. Finnan,* 598 F.3d 416, 422 (7th Cir. 2010) ("it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief") (citations omitted). More specifically, Genson and his co-counsel diligently represented Petitioner throughout the criminal proceedings. As an illustration, although Petitioner's sentencing guideline range was 168 to 210 months, Judge Moran sentenced him to 168 months. Petitioner's lower sentence is attributable to counsel's diligent efforts throughout the criminal proceedings. Also, the record overwhelming supported

the jury's verdict, and thus any error concerning counsel's impeachment of Matthews did not prejudice Petitioner. *See Strickland,* 466 U.S. at 696; *Harris,* 698 F.3d at 645.

### D. Handwriting Expert

Furthermore, Petitioner asserts that trial counsel was constitutionally ineffective for failing to call a handwriting expert. In particular, Petitioner argues that Intercounty employees forged his signature on financial documents and that Genson erred by not calling a handwriting expert at trial to dispute the signatures. The record, however, only reveals that Petitioner denied signing documents, not that Petitioner's signature was forged. Even if Petitioner's argument had a factual basis in the record, his lawyer's decision not to call an expert witness was a strategic decision. *See Valenzuela,* 261 F.3d at 699-700. Also, considering the totality of the evidence before the jury, Petitioner has not established that there is a reasonable probability that the outcome of his trial would have been different, but for counsel's alleged error. *See Harris,* 698 F.3d at 644.

### III. Evidentiary Hearing

Next, the Court, in its discretion, denies Petitioner's request for an evidentiary hearing because district courts need not hold evidentiary hearings in Section 2255 cases where the motion, files, and records of the case conclusively establish that a petitioner is not entitled to any relief. *See Yu Tian Li v. United States,* 648 F.3d 524, 532 (7th Cir. 2011); 28 U.S.C. § 2255(b). As discussed in detail above, the record in this matter conclusively establishes that Petitioner is not entitled to relief under Section 2255.

### IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255

Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Therefore, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order.  *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his Section 2255 motion, instead, he must first request a certificate of appealability.  *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).  A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right.  *See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. § 2253(c)(2).  Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, Petitioner has not established that jurists of reason would debate that his Section 2255 motion should have been resolved differently.  As such, the Court declines to certify any issues for appeal.

## CONCLUSION

For these reasons, the Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** March 7, 2013

            **ENTERED**

            _____
            **AMY J. ST. EVE**
            **United States District Court Judge**